801 A.2d 1134

GEORGE G. COURI, PLAINTIFF–APPELLANT, v. DR. RICHARD
GARDNER, DEFENDANT–RESPONDENT.

Argued March 12, 2002—Decided July 29, 2002.

*Robert H. Solomon* argued the cause for appellant (*Nagel Rice Dreifuss & Mazie,* attorneys; *Mr. Solomon* and *Bruce H. Nagel,* of counsel; *Mr. Solomon, Mr. Nagel* and *Randee M. Matloff,* on the briefs).

*Debra V. Urbanowicz–Pandos* argued the cause for respondent (*Duran & Pandos,* attorneys; *Ms. Urbanowicz–Pandos* and *Doreen A. Kunz,* on the brief).

The opinion of the Court was delivered by

ZAZZALI, J.

In this appeal we are called upon to determine the applicability of the Affidavit of Merit Statute, *N.J.S.A.* 2A:53A–26 to –29 (statute) to plaintiff's claim. Specifically, we must decide whether plaintiff George Couri was required to submit an affidavit of merit in an action brought against a psychiatrist retained by plaintiff as a potential expert witness in connection with visitation rights in a matrimonial action. Plaintiff contends that by the psychiatrist disseminating his preliminary report without plaintiff's consent to plaintiff's wife and to their child's guardian *ad litem,* the psychia-

trist breached his contract with plaintiff. Accordingly, plaintiff argues, pursuant to the plain language of the statute, he was not required to file an affidavit of merit. The trial court concluded that the action was for malpractice and not breach of contract, thus requiring an affidavit of merit. A majority of the Appellate Division affirmed.

In his dissent, Judge Rodríguez found that plaintiff's claim sounded in contract and thus no affidavit of merit was required pursuant to the statute. We agree with Judge Rodríguez that no affidavit of merit was required in plaintiff's case and thus reverse but on different grounds.

I

In July 1998, plaintiff was involved in a divorce proceeding against his wife. At issue was plaintiff's right to parenting time with his daughter. Plaintiff's attorney contacted defendant, Dr. Richard Gardner, a licensed psychiatrist, and retained him as an expert on the issue of visitation. Plaintiff paid defendant $12,000 to prepare a report and testify. There was no written contract memorializing the oral agreement. The only portion of the agreement in writing was defendant's fee schedule.

After interviewing plaintiff, his estranged wife, Deborah Couri, and their daughter, defendant wrote a preliminary report that he distributed simultaneously to plaintiff's attorney, his wife, and their daughter's court-appointed guardian *ad litem*. Defendant did not show the report to plaintiff or plaintiff's attorney before distributing it, nor did he seek or receive the consent of plaintiff or plaintiff's attorney to distribute the report. According to plaintiff, the guardian "returned the draft to plaintiff upon request, [but] Deborah Couri is attempting to use the draft against [plaintiff] in the matrimonial action."

Plaintiff subsequently filed a complaint against defendant for breach of contract and for breach of fiduciary duty. Both counts of the complaint pertained to defendant's distribution of the preliminary report to plaintiff's wife without plaintiff's knowledge

or consent. Defendant moved for dismissal of the action for failure to file an affidavit of merit. Plaintiff contended that he was not required to file an affidavit because his claim was based on breach of contract and not negligence. The trial court granted defendant's motion and dismissed plaintiff's complaint.

A divided panel of the Appellate Division affirmed. The majority held that plaintiff's claim is a malpractice action for professional negligence requiring expert testimony and not a contract action. Because there was no written agreement other than defendant's fee schedule, the majority concluded that an expert would be necessary to establish "the procedures and standards applicable to the retention of a mental health expert in a Family Part action involving parenting time issues."

In his dissent, Judge Rodríguez stated that the breach of contract claim should stand because the allegation "is not that [defendant] deviated from the accepted standards of a psychiatrist. Rather, the allegation is that [defendant] was retained to prepare a report and to issue it *only* to [plaintiff]." The dissent concluded that "it is of no moment that the same conduct by [defendant] could have also rendered him liable on a medical malpractice theory," which would require an affidavit of merit, because plaintiffs may plead more than one cause of action under *Rule* 4:5–6. However, in respect of the count for breach of fiduciary duty, the dissent agreed with the majority that the claim should be dismissed, stating that that count could be characterized as an act of professional malpractice or negligence.

Plaintiff filed a notice of appeal as of right with this Court in respect of whether his breach of contract claim was properly dismissed by the trial court. *R.* 2:2–1(a). Because plaintiff's appeal was limited to the issue addressed by the dissent—the breach of contract claim—and as plaintiff did not seek certification concerning the issue on which the Appellate Division was unanimous—the breach of fiduciary duty claim—the dismissal of plaintiff's breach of fiduciary duty claim is not before this Court. See

*R.* 2:2–1(a)(2); *Samuel v. Doe,* 158 *N.J.* 134, 140, 727 *A.*2d 1016 (1999).

## II

### A

The Affidavit of Merit Statute, *N.J.S.A.* 2A:53A–27, provides, in pertinent part:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with *an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.*
>
> [ (Emphasis added).]

A "licensed person" is defined as a licensed accountant, architect, attorney, dentist, engineer, physician, podiatrist, chiropractor, registered nurse or health care facility. *N.J.S.A.* 2A:53A–26. With certain exceptions not relevant here, failure to provide an affidavit results in dismissal of the complaint. As stated by this Court, the "overall purpose of the statute is 'to require plaintiffs in malpractice cases to make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily could be identified at an early stage of litigation.' " *Cornblatt v. Barow,* 153 *N.J.* 218, 242, 708 *A.*2d 401 (1998) (quoting *In re Petition of Hall,* 147 *N.J.* 379, 391, 688 *A.*2d 81 (1997)).

Defendant maintains, and the majority of the Appellate Division held, that plaintiff's claim against defendant is a malpractice claim and thus the statute applies. Plaintiff responds, and the dissent found, that the claim against defendant is a breach of contract claim and, pursuant to the plain language of the statute, the statute is not applicable to his claim.

In determining the applicability of the statute to plaintiff's claim, we are called on to determine both the specific nature of plaintiff's claim and whether the statute applies to breach of

contract claims. Because the latter determination requires us to engage in statutory interpretation, our "overriding goal [in respect of that determination] must be to determine the Legislature's intent." *State, Dep't of Law and Pub. Safety v. Gonzalez,* 142 *N.J.* 618, 627, 667 *A.*2d 684 (1995). The first step in that quest is the consideration of the plain meaning of the statutory language. *Kimmelman v. Henkels & McCoy, Inc.,* 108 *N.J.* 123, 128, 527 *A.*2d 1368 (1987). If that language is clear on its face, " 'the sole function of the court[ ] is to enforce it according to its terms.' " *Sheeran v. Nationwide Mut. Ins. Co.,* 80 *N.J.* 548, 556, 404 *A.*2d 625 (1979) (citation omitted). However, we also have stressed that when a " 'literal interpretation of individual statutory terms or provisions' would lead to results 'inconsistent with the overall purpose of the statute,' that interpretation should be rejected." *Hubbard v. Reed,* 168 *N.J.* 387, 392–93, 774 *A.*2d 495 (2001) (quoting *Cornblatt, supra,* 153 *N.J.* at 242, 708 *A.*2d 401 (citation and quotations omitted)).

### B

With those precepts in mind, we turn to the language of the statute. There are three elements to consider when analyzing whether the statute applies to a particular claim: (1) whether the action is for "damages for personal injuries, wrongful death or property damage" (nature of injury); (2) whether the action is for "malpractice or negligence" (cause of action); and (3) whether the "care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint [ ] fell outside acceptable professional or occupational standards or treatment practices" (standard of care). *N.J.S.A.* 2A:53A–27. Although it is the "cause of action" prong that is the focal point of the parties' dispute, we shall address each of the factors in turn to determine properly the applicability of the statute to plaintiff's claims.

■ In respect of the "nature of the injury" element of the statute, the statute covers actions "for damages for personal injuries, wrongful death or property damage." *Ibid.* In plaintiff's

complaint, he requested "compensatory and punitive damages," but at oral argument plaintiff narrowed his request for damages to the $12,000 that he paid to defendant for the report and any incidental costs incurred in the matrimonial action resulting from the necessity of filing motions based on defendant's dissemination of the report. Accordingly, because the damages that plaintiff is seeking are neither "damages for personal injuries, wrongful death or property damage," plaintiff's claim does not fall within the first element of the statute. Indeed, defendant conceded at oral argument that if the only damages that plaintiff is seeking are the $12,000 for the report and related costs, the statute does not apply to plaintiff's claim.

Accordingly, for purposes of plaintiff's appeal we could conclude our opinion at this juncture, reverse the dismissal of plaintiff's complaint, and remand the case to the trial court. However, there is an apparent conflict in the Appellate Division whether the statute ever should apply to a breach of contract claim. *Compare Charles A. Manganaro Consulting Eng'rs v. Carneys Point Township Sewerage Auth.*, 344 *N.J.Super.* 343, 349, 781 *A.*2d 1116 (App.Div.2001) (finding that statute applied to defendant's counterclaim for breach of contract because underlying factual allegations were of professional malpractice), *with Darwin v. Gooberman*, 339 *N.J.Super.* 467, 481, 772 *A.*2d 399 (App.Div.), *certif. denied*, 169 *N.J.* 609, 782 *A.*2d 426 (2001) (stating that statute "plainly does not apply to breach-of-contract" cases). To resolve that conflict and to provide future guidance in respect of the meaning and applicability of the statute, we continue with our analysis.

C

The second element of the statute is the "cause of action" element—whether a plaintiff's claim is for "malpractice or negligence." The dissent relied on this plain language in finding that because the plaintiff's claim was a breach of contract claim, as opposed to a tort claim, the statute did not apply to plaintiff.

As stated, there is a divergence of opinion in the Appellate Division whether the statute ever should apply to a breach of contract claim. *Darwin, supra,* involved a patient who experienced infection, pain and scarring after a physician treated her for heroin addiction using a rapid detoxification method on an outpatient basis. 339 *N.J.Super.* at 469–71, 772 *A.*2d 399. In her complaint, the plaintiff alleged claims for medical malpractice, lack of informed consent, assault and battery, breach of contract, and product liability. *Id.* at 471, 772 *A.*2d 399. The plaintiff did not file an affidavit of merit, contending that it was unnecessary because she did not intend to rely on expert testimony to establish negligence. *Id.* at 474, 772 *A.*2d 399. Instead, the plaintiff intended to utilize published accounts of the physician's controversial methods, including references to a complaint filed by the State Attorney General alleging that the physician's patients were not properly informed of the risks of the treatment and did not receive proper aftercare. *Id.* at 472, 474, 772 *A.*2d 399. The trial court dismissed all counts of the plaintiff's complaint pursuant to the statute, finding that the plaintiff's case involved "a medical procedure. Whether you think it's good or bad can only be determined by an expert." *Id.* at 475, 772 *A.*2d 399.

The Appellate Division affirmed the dismissal of the plaintiff's claims of medical malpractice and lack of informed consent, but reversed the dismissal of the assault and battery, breach of contract and product liability claims. *Id.* at 481, 772 *A.*2d 399. In respect of the breach of contract claim, the panel held that the statute "plainly does not apply to breach of contract ... cases. We offer no view on whether or not expert testimony is required on [that] count[ ] to prevail. We hold only that a *N.J.S.A.* 2A:53A–27 affidavit of merit is not required in such cases." *Ibid.*

A second Appellate Division decision discussing the issue at hand, *Manganaro, supra,* involved a breach of contract counterclaim filed by the defendant client in an action filed by the plaintiff engineering firm to recover fees for engineering services related to the construction and improvement of sewage treatment facili-

ties. 344 *N.J.Super.* at 346, 781 *A.*2d 1116. There, the alleged breach of contract involved the plaintiff's "fail[ure] to properly design the project[,] . . . to properly prepare the plans and specifications, and . . . to properly review shop drawings submitted by the general contractor." *Ibid.*

The panel held that, without an affidavit of merit, the defendant could raise the above allegations as an affirmative defense, but not as a claim for recoverable damages. *Id.* at 346–47, 781 *A.*2d 1116. The court found that even though the claim sounded in contract, the underlying factual allegations were "of professional malpractice—that plaintiff failed to 'act with that degree of care, knowledge, and skill ordinarily possessed and exercised in similar situations by the average member of the profession practicing in the field' which will require expert testimony to prove." *Id.* at 349, 781 *A.*2d 1116 (quoting *Aiello v. Muhlenberg Reg'l Med. Ctr.*, 159 *N.J.* 618, 626, 733 *A.*2d 433 (1999)).

Although the *Darwin* court looked solely at the fact that the plaintiff's claim was for "breach of contract" in determining the applicability of the statute to the claim, the *Manganaro* court looked beyond the "breach of contract" label to the factual underpinnings of the claim. To the *Manganaro* court, if the underlying factual allegations implicate professional malpractice, that is, if the offending party failed to "act with that degree of care, knowledge, and skill ordinarily possessed and exercised in similar situations by the average member of the profession practicing in the field," *id.* at 349, 781 *A.*2d 1116 (citation and quotations omitted), then it is of no moment that the claim is labeled "breach of contract."

A third Appellate Division decision, *Levinson v. D'Alfonso & Stein*, 320 *N.J.Super.* 312, 727 *A.*2d 87 (1999), also addressed the issue of whether to uphold or dismiss a claim for breach of contract for failure to provide an affidavit of merit. *Levinson* involved a claim brought by a client against his attorney for both "breach[ ] [of] . . . contractual and professional duty" where the attorney settled the client's case without client approval as specifically required by the written retainer agreement. *Id.* at 316, 727

A.2d 87. The plaintiff failed to file an affidavit of merit and the Appellate Division majority allowed the breach of contract claim to proceed in its entirety on the ground that "this is not merely a professional negligence claim dressed in other legal clothing; it is a classic contract claim against an agent," *id.* at 317, 727 *A.*2d 87, for breach of a written contract of employment. The majority observed that courts "should not judicially subject a matter of contract, when its breach requires no expert assessment of care, skill or knowledge, to the requirements of those tort claims which do." *Id.* at 318, 727 *A.*2d 87.

In holding that the statute did not apply to the plaintiff's claim, the *Levinson* court highlighted the fact that the plaintiff's claim was a "classic contract claim." *Id.* at 317, 727 *A.*2d 87. However, it also emphasized that the breach of the contract in question did not require an expert assessment of care, skill or knowledge. *Id.* at 318, 727 *A.*2d 87. Thus, the *Levinson* majority's position on the issue of the statute's applicability to breach of contract claims generally is unclear.

Conversely, Judge Wecker squarely addressed the issue in her concurrence in *Levinson,* stating that the statute should not be held inapplicable to a complaint alleging breach of contract where the same facts support a professional negligence cause of action. *Id.* at 322–23, 727 *A.*2d 87 (Wecker, J., concurring). To Judge Wecker, "the mere restatement of a professional duty in the language of contract should not create a separate cause of action in contract, with the attendant legal consequence of avoiding the affidavit-of-merit requirement." *Id.* at 322, 727 *A.*2d 87 (Wecker, J., concurring).

Although this Court has never addressed directly the issue whether the statute is applicable to breach of contract claims, in *Cornblatt, supra,* we implicitly recognized that a breach of contract claim for failing to perform up to professional standards was within the ambit of the statute, regardless of the phrasing. 153 *N.J.* at 236, 708 *A.*2d 401. In *Cornblatt,* the defendant client filed a breach of contract counterclaim in her plaintiff attorney's suit

for legal fees. The alleged breach was for "failing to carry out his duties and render services in a reasonable manner" by delaying the case and not settling, thereby increasing the time billed. *Id.* at 225, 708 *A.*2d 401. The trial court rejected the argument that the statute did not apply to breach of contract claims, but the issue was not addressed on appeal. *Id.* at 226, 708 *A.*2d 401. This Court ultimately found that the statute did not apply to the defendant's counterclaim, but we based our holding on the fact that the defendant's cause of action occurred before the effective date of the statute. *Id.* at 236, 708 *A.*2d 401. We made no reference to the fact that the defendant's claim was a breach of contract claim in finding the statute inapplicable.

## D

■ We now address the issue of whether the statute is applicable to breach of contract claims. As stated, the first step in our quest to determine the Legislature's intent is to consider the plain meaning of the statutory language. *Kimmelman, supra,* 108 *N.J.* at 128, 527 *A.*2d 1368. The statutory language at issue is "an alleged act of *malpractice or negligence.*" *N.J.S.A.* 2A:53A–27 (emphasis added). If that language is clear on its face, "the sole function of the court[ ] is to enforce it according to its terms." *Sheeran, supra,* 80 *N.J.* at 556, 404 *A.*2d 625. The plain meaning of this language clearly is that only causes of action based on "malpractice or negligence" are covered by the statute. However, we also have stressed that when a "literal interpretation of individual statutory terms or provisions would lead to results inconsistent with the overall purpose of the statute, that interpretation should be rejected." *Hubbard, supra,* 168 *N.J.* at 392–93, 774 *A.*2d 495 (citation and quotations omitted). As noted, the overarching purpose of the statute is "to require plaintiffs in malpractice cases to make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily could be identified at an early stage of litigation." *Cornblatt, supra,* 153 *N.J.* at 242, 708 *A.*2d 401 (citation and quotations omitted). Stat-

ed differently, the purpose of the statute is to "weed out frivolous lawsuits early in the litigation while, at the same time, ensuring that plaintiffs with meritorious claims will have their day in court." *Hubbard, supra,* 168 *N.J.* at 395, 774 *A.*2d 495.

The statute accomplishes this purpose by requiring that "the plaintiff [provide an affidavit stating] that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint[ ] fell outside acceptable professional or occupational standards or treatment practices." *N.J.S.A.* 2A:53A–27. More specifically, that standard of care is the "degree of care, knowledge, and skill ordinarily possessed and exercised in similar situations by the average member of the profession practicing in the field." *Velazquez v. Portadin,* 163 *N.J.* 677, 686, 751 *A.*2d 102 (2000). That standard of care also is the third element of the statute discussed *supra,* at 337, 801 *A.*2d at 1139.

It is not the label placed on the action that is pivotal but the nature of the legal inquiry. Accordingly, when presented with a tort or contract claim asserted against a professional specified in the statute, rather than focusing on whether the claim is denominated as tort or contract, attorneys and courts should determine if the claim's underlying factual allegations require proof of a deviation from the professional standard of care applicable to that specific profession. If such proof is required, an affidavit of merit is required for that claim, unless some exception applies. See *Hubbard, supra,* 168 *N.J.* at 390, 774 *A.*2d 495 (holding that an affidavit of merit is not required in "common knowledge" cases when an expert will not be called to testify " 'that the care skill or knowledge ... [of the defendant] fell outside acceptable professional or occupational standards or treatment practices' ") (citing *N.J.S.A.* 2A:53A–27).

That analysis will ensure that breach of contract claims that depend on proof of a deviation from a professional standard of care and that are of a frivolous nature will not be brought. Moreover, it also will ensure that tort claims brought against licensed professionals that allege ordinary negligence, but not

malpractice, will not be subject to the statute. Stated differently, by asking whether a claim's underlying factual allegations require proof of a deviation from a *professional* standard of care, courts can assure that claims against licensed professionals acting in a professional capacity that require proof of ordinary negligence but not of a deviation from professional standards are not encompassed by the statute. For example, while the former standard would include allegations that a psychiatrist failed to diagnose a patient properly or provide proper treatment, it would exclude allegations that a psychiatrist negligently tripped a patient when the patient entered the doctor's office, which clearly would be outside the scope of the statute.

In sum, when asserting a claim against a professional covered by the statute, whether in contract or in tort, a claimant should determine if the underlying factual allegations of the claim require proof of a deviation from the professional standard of care for that specific profession. If such proof is required, an affidavit of merit shall be mandatory for that claim, unless either the statutory, *N.J.S.A.* 2A:53A–28, or common knowledge exceptions apply.

### III

We now apply the foregoing analysis to the appeal at hand. As noted, the primary inquiry is whether the factual allegations underlying plaintiff's claim require proof of a deviation from the professional standard of care for a physician.

Plaintiff's claim is that he retained defendant to act as a potential expert in plaintiff's matrimonial action, and that plaintiff maintained the right to review defendant's findings and elect not to serve defendant's report or name him as an expert to be used at trial. Thus, plaintiff contends that when defendant forwarded a copy of defendant's report to plaintiff's wife without the knowledge or consent of plaintiff, defendant breached his contract with plaintiff.

Although plaintiff retained defendant as an expert in his matrimonial action because defendant was a psychiatrist, plaintiff hired

defendant for the primary purpose of acting as an expert witness who would prepare a report and testify on plaintiff's behalf. Implicit in defendant's hiring as an expert witness was the condition that defendant would provide his report to plaintiff only, and that it was within plaintiff's discretion whether to use the report and provide it to others. Plaintiff is not claiming that defendant erred in respect of the conclusions that he drew concerning psychiatric/medical matters or that defendant acted improperly from a psychiatric/medical standpoint in interviewing plaintiff's child. Instead, the crux of plaintiff's complaint is that defendant acted improperly as an expert witness by disseminating the report to others without the knowledge or consent of plaintiff. Although defendant's unauthorized dissemination of the report also might implicate a deviation from prevailing professional standards of practice, proof of that deviation is not essential to the establishment of plaintiff's right to recover based on breach of contract.

Accordingly, plaintiff's breach of contract claim does not require proof of a deviation from the professional standard of care to be provided by a psychiatrist, and thus the claim lies beyond the purview of the statute.

## IV

In conclusion, we hold that the Affidavit of Merit Statute is not applicable to plaintiff's claim. The dismissal of plaintiff's complaint is reversed and the matter is remanded to the Law Division.

*For reversal and remandment*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, LaVECCHIA and ZAZZALI—6.

*Opposed*—None.